# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR ANDERSON, MANUEL RIVERA, and LARA SENA, individually and as representatives of a class of similarly situated persons, and on behalf of SOUTHWEST AIRLINES CO. RETIREMENT SAVINGS PLAN, THE SOUTHWEST AIRLINES CO. 401(k) PLAN, and THE SOUTHWEST AIRLINES CO. PROFITSHARING PLAN | § § § § § § § § § § | |
| v. | § § | CIVIL ACTION NO. 3:25-CV-0214-S |
| SOUTHWEST AIRLINES CO., THE BOARD OF DIRECTORS OF SOUTHWEST AIRLINES CO., SOUTHWEST AIRLINES CO. RETIREMENT SAVINGS PLAN COMMITTEE, THE SOUTHWEST AIRLINES CO. PROFITSHARING/401(k) COMMITTEE, LORI WINTERS, and DOES 1-40 | § § § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants' Motion to Dismiss the First Amended Complaint ("Motion") [ECF No. 37]. The Court has reviewed the Motion, the Memorandum of Law in Support of the Motion ("Defendants' Brief") [ECF No. 38], Plaintiffs' Response and Memorandum of Law in Opposition to the Motion ("Response") [ECF No. 45], the Reply in Support of the Motion [ECF No. 47], Defendants' Notice of Supplemental Authority in Support of the Motion ("Defendants' Notice") [ECF No. 53], Plaintiffs' Response to Defendants' Notice and Notice of Additional Supplemental Authority [ECF No. 54], and the applicable law. For the following reasons, the Court **DENIES** the Motion.

# I. BACKGROUND

This case is a proposed class action arising out of Defendants'[1] alleged breach of their fiduciary duties in managing the Southwest Airlines Co. Retirement Savings Plan ("Plan")[2]. Defendant Southwest Airlines Co. offers the Plan to its current and former employees and their beneficiaries. Pls.' First Am. Compl. ("Complaint") [ECF No. 36] ¶¶ 2, 4, 39. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and Defendants are fiduciaries. *Id.* ¶¶ 2-3, 34.

One of the funds offered by the Plan, the Harbor Capital Appreciation Fund ("Harbor Fund") is an actively managed large-cap growth fund.[3] *Id.* ¶¶ 6-8. Plaintiffs[4] allege that the Harbor Fund[5] has chronically underperformed both similar comparator funds and its own self-selected target benchmark. *Id.* ¶¶ 5, 9. Specifically, Plaintiffs claim that by December 31, 2018, the Harbor Fund had underperformed its self-selected target benchmark and comparator funds identified by Plaintiffs over the preceding three-, five-, and nine-year periods. *Id.* ¶ 9. Plaintiffs further claim a prudent fiduciary would have removed the Harbor Fund from the Plan no later than January 2019.

---

[1] Defendants are Southwest Airlines Co., the Board of Directors of Southwest Airlines Co., Southwest Airlines Co. Retirement Savings Plan Committee, the Southwest Airlines Co. ProfitSharing/401(k) Committee, Lori Winters, and Does 1-40.

[2] The Plan is a merged plan "comprised of the assets of what were formerly called the Southwest Airlines Co. 401(k) Plan . . . and the Southwest Airlines Co. ProfitSharing Plan." Pls.' First Am. Compl. ¶¶ 35-36.

[3] "Large-cap growth funds typically pursue a strategy of investing in the stock of large companies with high growth potential." Compl. ¶ 7.

[4] Plaintiffs are Arthur Anderson, Manuel Rivera, and Lara Sena, individually and as representatives of a class of similarly situated persons, and on behalf of Southwest Airlines Co. Retirement Savings Plan, the Southwest Airlines Co. 401(k) Plan, and the Southwest Airlines Co. ProfitSharing Plan.

[5] The Harbor Fund was initially a mutual fund before migrating its assets to a collective investment trust in 2022. Compl. ¶ 56. The collective investment trust is "substantially identical" to the original mutual fund. *Id.* Therefore, the performance of the Harbor Fund in both its pre- and post-2022 forms is relevant to Plaintiff's allegations, and the Court does not distinguish between the two in its analysis below.

*Id.* From January 1, 2019, through December 31, 2024, the Harbor Fund allegedly continued to cumulatively underperform the benchmark and the comparator funds. *Id.* ¶ 104. Therefore, according to Plaintiffs, Defendants breached their fiduciary duties by retaining the Harbor Fund, *id.* ¶¶ 119-28, and breached their duty to monitor fiduciaries to which they delegated responsibilities, *id.* ¶¶ 129-34.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' claims, arguing that Plaintiffs cannot state a claim for breach of fiduciary duty by alleging underperformance alone, Defs.' Br. 1, that Plaintiffs failed to plead meaningful benchmarks, *id.* at 2-3, that Plaintiffs cannot sustain a claim for imprudence by challenging a single fund, *id.* at 7-8, that other prudent investors selected the Harbor Fund, *id.* at 8-9, and that Plaintiffs' own allegations show that Defendants were monitoring the Harbor Fund, *id.* at 9. Defendants also move to dismiss Plaintiffs' failure to monitor claim because it is derivative of the breach of fiduciary duty claim and because the Fifth Circuit has not recognized such a claim. *Id.* at 23-24.

### A. ERISA Duty of Prudence

ERISA imposes a fiduciary duty of prudence, which requires plan fiduciaries to "discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Hughes v. Nw. Univ.*, 595 U.S. 170, 172 (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)). "In the ERISA context, . . . '[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.'" *Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 WL 1574342, at *2 (5th Cir. Apr. 11, 2024) (second alteration in original) (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)). "This continuing duty exists separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments at the outset." *Tibble*, 575 U.S. at 529. Although "[t]he prudence standard normally focuses on the process or method by which a fiduciary arrived at an investment decision," a plaintiff's pleading is sufficient "if the court can 'reasonably infer' from the . . . pleadings that the defendant fiduciary's 'process was flawed.'"

*Seidner v. Kimberly-Clark Corp.*, No. 3:21-CV-867-L, 2023 WL 2728714, at *5 (N.D. Tex. Mar. 30, 2023) (quoting *Pension Benefits Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).

To state a claim for breach of the fiduciary duty of prudence under ERISA, Plaintiffs must plead that "(1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; . . . (3) Defendants breached their fiduciary duties under ERISA; and (4) participants of the Plan suffered losses as a result of such breach." *Id.* at *6 (citation omitted). Defendants do not dispute that the Plan is governed by ERISA or that they are fiduciaries. Defs.' Br. 2-4. Defendants challenge only whether Plaintiffs have adequately alleged that Defendants breached their fiduciary duties. *Id.* at 1.

Defendants contend that Plaintiffs cannot meet the third element of a breach of fiduciary duty claim because they have not adequately alleged imprudence. According to Defendants, "imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds," and Plaintiffs' alleged comparator funds are not a "meaningful benchmark" for evaluating the Harbor Fund's performance. *Id.* at 2 (citation omitted). Defendants also argue that Plaintiffs cannot sustain a claim for imprudence by challenging a single fund, *id.* at 7-8, that other prudent investors selected the Harbor Fund, *id.* at 8-9, and that Defendants did monitor the Harbor Fund, *id.* at 9.

### i. Meaningful Benchmark

Although some courts of appeals have established a meaningful benchmark requirement, neither the Supreme Court nor the Fifth Circuit has done so.[6] Within the Fifth Circuit, district courts have split on whether to apply the meaningful benchmark requirement at the pleadings

---

[6] In *Perkins*, the Fifth Circuit discussed (but did not adopt) the "meaningful benchmark" standard. 2024 WL 1574342, at *5 n.8.

stage. *Compare Blackmon v. Zachary Holdings, Inc.*, No. 5:20-CV-988-DAE, 2021 WL 2190907, at \*5 (W.D. Tex. Apr. 22, 2021) (refusing to determine the appropriate benchmark at the motion to dismiss stage because it "raised factual questions that were not properly addressed on a motion to dismiss." (cleaned up)), *and Laliberte v. Quanta Servs., Inc.*, No. 4:22-CV-03290, 2023 WL 12047212, at \*3 (S.D. Tex. Sep. 29, 2023) (same), *with Locascio v. Fluor Corp.*, No. 3:22-CV-0154-X, 2023 WL 320000, at \*6 (N.D. Tex. Jan. 18, 2023) (granting a motion to dismiss and leave to amend because "[the plaintiff] needs to provide meaningful comparison in his pleadings to demonstrate that his selected funds are sufficiently similar benchmarks").

There is also no binding precedent explaining what, exactly, a meaningful benchmark is. *See Locascio*, 2023 WL 320000, at \*6 ("So what is a meaningful benchmark? The Fifth Circuit has yet to define it exactly . . . ."). As such, the Court is left without a reliable standard to determine whether Plaintiffs' proffered comparator funds are sufficiently similar to the Harbor Fund to constitute meaningful benchmarks. As the Supreme Court and the Fifth Circuit have not adopted the "meaningful benchmark" requirement, and because neither court has provided guidance on what constitutes a meaningful benchmark, the Court declines to adopt the "meaningful benchmark" requirement at the motion to dismiss stage.

Having declined to adopt the meaningful benchmark requirement, and accepting Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts for the Court to infer a breach of the fiduciary duty of prudence.

### ii. Single Fund, Other Investors, and Monitoring

Defendants further argue that Plaintiffs' claim fails because Plaintiffs cannot state a claim for breach of fiduciary duty by challenging only a single fund. However, the Fifth Circuit has not

established any such rule, and courts in this circuit have refused to dismiss breach of fiduciary duty claims involving a single fund. *See, e.g.*, *Jones v. Mem'l Hermann Health Sys.*, No. 4:24-CV-2105, 2025 WL 2698700, at *3 (S.D. Tex. Aug. 6, 2025) (refusing to dismiss a breach of fiduciary duty claim challenging a single fund), *report and recommendation adopted by* 2025 WL 2697110 (S.D. Tex. Sep. 15, 2025).

Defendants' argument that other investors choose the Harbor Fund is unavailing. Regardless of other investors' decisions about the Harbor Fund, the Court concludes that Plaintiffs have adequately pleaded imprudence in the context of the Plan.

Defendants also contend that Plaintiffs' allegations show that Defendants monitored the Plan. But Defendants are not required to just monitor the Plan; they are required to "***properly*** monitor investments and remove imprudent ones." *Hughes*, 595 U.S. at 175 (emphasis added). Because Plaintiffs have alleged facts that allow the Court to infer that Defendants' retention of the Harbor Fund was imprudent, Plaintiffs have adequately alleged that Defendants failed to properly monitor their investments.

*    *    *

Accepting well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have pleaded sufficient facts to state a claim for breach of fiduciary duty that is plausible on its face. Therefore, the Court declines to dismiss Plaintiffs' breach of fiduciary duty claim at this early stage of this lawsuit.

### B. Failure to Monitor

Defendants move to dismiss Plaintiffs' failure to monitor claim because it is derivative of Plaintiffs' breach of fiduciary duty claim. Defs.' Br. 23-24. Because the Court does not dismiss

7

Plaintiffs' predicate breach of fiduciary duty claim, it also does not dismiss the derivative failure to monitor claim on this basis.

Further, Defendants, in a footnote, point out that the Fifth Circuit has never explicitly recognized a failure to monitor claim that holds corporate directors personally liable for failing to monitor fiduciaries. Defs.' Br. 24 n.12 (citing *Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018)). But multiple district courts within the Fifth Circuit have allowed failure to monitor claims to proceed past the motion to dismiss stage. *Jones*, 2025 WL 2698700, at *3 n.5 (declining to dismiss the plaintiffs' failure to monitor claim); *Blackmon*, 2021 WL 2190907, at *7 ("[D]istrict courts in the Fifth Circuit have recognized a failure to monitor theory of liability." (citation omitted)). The Court concludes that there is sufficient support for the existence of a failure to monitor claim and thus declines to dismiss Plaintiffs' failure to monitor claim at this time.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss the First Amended Complaint [ECF No. 37].

**SO ORDERED.**

SIGNED March 25, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

8